**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

                  Plaintiff,

v.

Alan Jeffrey Farber,

                  Defendants.

No. CR13-0221-PHX-DGC

**ORDER**

Defendant Jeffrey Farber has filed a motion to suppress certain statements he made to a law enforcement officer and a motion to sever counts in the indictment. Doc. 40 and 42.  The Court held an evidentiary hearing on May 30, 2013.  For the reasons that follow, the Court will suppress the statements and deny the motion to sever.

**I.    Background.**

A string of related attempted bank robberies occurred from July 3, 2012 through January 4, 2013.  Doc. 48 at 1.  Only the robbery on July 3, 2012 was successful, with $94,800 being taken.  *Id*.  Two banks had holes cut in the roofs and hoax bombs placed in the banks.  *Id.*  In a third attempted robbery, a hoax bomb was left in a bank.  *Id.*  In a fourth attempted robbery, a shot was fired through a window after a caller asked for money.  *Id.*

Defendant Jeffrey Farber was linked to the crimes and placed under surveillance. *Id.* at 2.  During surveillance, investigators saw Defendant repeatedly visit a storage facility.  *Id.*  Upon Defendant's arrest, his storage unit was searched and found to contain

1    an unregistered machinegun and three unregistered short-barreled shotguns, along with

2    bomb-making material and heavy power tools.  *Id.* at 3.  Defendant kept twelve legal

3    firearms at his home.  *Id.*

4         Defendant was arrested on February 6, 2013 and invoked his *Miranda* rights.

5    Doc. 40 at 2.  Defendant was transported to the Maricopa County 4th Avenue Jail by

6    Detective Daniel Snodgrass, who testified at the evidentiary hearing that he had

7    participated in surveillance of Defendant and was aware of some background information

8    regarding the case, including that Defendant likely had been a member of the Las

9    Angeles Police Department ("LAPD").   During the transport, Snodgrass engaged

10   Defendant in "small talk" about his time with the LAPD.  *Id.*  Defendant stated he had

11   been an officer for approximately eight years and had also served in the Army Special

12   Forces and Navy.  *Id.*  Defendant described the circumstances which led to his medical

13   retirement from the LAPD.  Id.  Snodgrass asked and Defendant responded that he had

14   taken a lump sum payout instead of monthly payments for his retirement..  *Id.* at 2-3.

15   Snodgrass also asked what Defendant did for a living.  *Id.* at 3.  Defendant said he did

16   some day trading and that he knew someone who made $95,000 in one day.  *Id.*

17        The next day, Snodgrass transported Defendant to the U.S. Marshals Service.  *Id.*

18   During the transport Snodgrass said to Defendant "at least you didn't hurt anybody doing

19   what you did."  *Id.*  Defendant replied, "[n]o, I didn't hurt anybody."  *Id.*  Defendant is

20   charged with one count of Armed Bank Robbery, three counts of Attempted Armed Bank

21   Robbery, one count of Use of a Firearm During a Crime of Violence, and four counts of

22   Possession of Unregistered Firearms.  Doc. 18 at 1-4.

23   **II.    Miranda Violation.**

24        Defendant argues that Snodgrass functionally interrogated him without legal

25   counsel present.  Doc. 40 at 2-3.  Suspects who invoke their right to counsel cannot be

26   questioned without a lawyer present.  *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

27   This protection applies not only to direct interrogation, but also to the functional

28   equivalent of interrogation.  *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980).  It therefore

1    prohibits "not only to express questioning, but also to any words or actions on the part of
2    the police (other than those normally attendant to arrest and custody) that the police
3    should know are reasonably likely to elicit an incriminating response from the suspect."
4    *Id.* An incriminating response is "any response . . . that the *prosecutio*n may seek to
5    introduce at trial." *Id.* at 301 n. 5 (emphasis original). The test to determine whether a
6    functional interrogation has occurred is objective and based on what an officer should
7    have known, not on an officer's actual intent to interrogate. *Id*. at 301-02.

8        The government argues that Snodgrass was not seeking incriminating information
9    because the government already knew of Defendant's military and police background.
10   Doc. 51 at 3.  The government may have independently corroborated the Defendant's law
11   enforcement experience, but that has no bearing on whether Defendant's statements were
12   incriminating responses.   Because the government is now seeking to introduce
13   Defendant's statements at trial, they are deemed incriminating responses for purposes of
14   this motion. *Innis*, 446 U.S. at 301 n. 5.

15       The government argues that Snodgrass's questions on February 6, 2013 about
16   Defendant's work and law enforcement background were only small talk.  Doc. 51 at 3.
17   Small talk is not always the functional equivalent to interrogation, *see Mickey v. Ayers*,
18   606 F.3d 1223, 1235 (9th Cir. 2010), but Snodgrass did more than discuss the weather.
19   He asked Defendant questions about specific issues that could demonstrate Defendant's
20   motive and knowledge for the bank robberies, including his police training, the financial
21   terms of his retirement, and what Defendant did for a living.   These questions were
22   reasonably likely to elicit responses that could be helpful to the prosecution at trial,
23   suggesting that Defendant had knowledge of explosives and firearms, and had financial
24   need.  Accordingly, Defendant's answers to Snodgrass's questions on February 6, 2013
25   were the functional result of interrogation.

26       The government argues that Snodgrass's statement on February 7, 2013 – "at least
27   you didn't hurt anyone doing what you did" – did not seek any information; the
28   Defendant simply volunteered the response "[n]o, I didn't hurt anyone."  Doc. 51 at 3.

While testifying, Snodgrass stated that his comment was meant to put Defendant at ease. Snodgrass may not have intentionally evoked an incriminating response, but the issue is not his intent, it is whether his statement was reasonably likely to evoke an incriminating response. *Innis*, 446 U.S. at 301-02. Words phrased as a statement may constitute functional interrogation. *U.S. v. Padilla*, 387 F.3d 1087, 1093 (9th Cir. 2004) (deciding that an officer's statement to a defendant that it was his "last chance" to cooperate with the investigation was functional interrogation). The Court concludes that Snodgrass's statement was reasonably likely to elicit an incriminating response. It was a comment about the crimes for which Defendant was charged, and virtually any response would likely have had some incriminating effect. Accordingly, the Defendant's statement made on February 7, 2013 was the functional result of interrogation.

The Court concludes that Defendant's statements on February 6 and 7 were elicited in violation of his right to counsel. As a result, the Court will grant Defendants' motion to suppress the statements.

**III.   Motion to Sever.**

Defendant argues that counts 1-5 of the indictment, which concern the alleged bank robberies, should be severed from counts 6-9, which concern unlawful possession of unregistered firearms. Doc. 42 at 5-7. Rule 8(a) provides for the joinder of two or more offenses if (1) they are of similar character, (2) they are based on the same act or transaction, or (3) they constitute parts of a common scheme or plan. Fed. R. Crim. P. 8(a). Rule 8(a) has been "broadly construed in favor of initial joinder[.]" *U.S. v. Friedman*, 445 F.2d 1076, 1082 (9th Cir. 1971).

The government argues that the counts are properly joined because they constitute part of a common scheme and there will be evidentiary overlap in their proof. Doc. 48 at 3. The Court agrees. The unregistered firearms were found in Defendant's storage unit. *Id.* The unit also housed bomb making materials and power tools which the government claims were used to construct fake bombs for the robberies and cut holes in the roofs of banks. *Id.* The Defendant kept twelve legally registered firearms at his home, the

government asserts, showing that the storage unit was the knowingly selected location of his illegal activities. *Id.* There is also evidentiary overlap between the counts. Information regarding surveillance of Defendant will be relevant to explain how Defendant was linked to the storage unit and how the unregistered firearms were discovered in that unit. Defendant's background as a police officer and military member (which the government says it can prove through sources other than his statements to Detective Snodgrass) will be relevant to all counts to show knowledge of firearms and explosives. Accordingly, joinder is appropriate under Rule 8(a).

Rule 14(a) provides for the severance of charges to avoid manifest prejudice to a defendant. Fed. R. Crim. P. 14(a). Defendant argues that even if the counts are properly joined under Rule 8(a), their joinder will result in manifest prejudice. Doc. 42 at 7-9. Whether to grant severance is a matter entrusted to the discretion of the trial judge. *U. S. v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998). "The test for abuse of discretion by the district court is whether a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." *Id.* (citation and quotation omitted).

Defendant argues that evidence of his possession of illegal firearms would be inadmissible at trial for the bank robbery charges, resulting in a high risk of undue prejudice if all counts are tried together. Doc. 42 at 8. Defendant also argues that recent highly publicized tragedies and the nature of the illegal firearms found will stigmatize Defendant. *Id.* at 8-9. The Court does not agree. Careful jury instructions will protect Defendant from undue prejudice. The Court will instruct the jury that their verdict on one count should not control their verdict on any other count, and that they must base their verdict on the evidence presented at trial and not on any personal likes or dislikes, opinions, prejudices, or sympathy. The Court will also entertain any other instructions Defendant wishes to propose to reduce prejudice. Jurors are presumed to follow instructions given to them by the Court. *See Richardson v. Marsh*, 481 U.S. 200, 211

1  (1987); *Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985).  The Court concludes that

2  careful instructions and trial management will eliminate any risk of manifest prejudice.

3  **IT IS ORDERED:**

4  1.  Defendants motion to suppress (Doc. 40) is **granted**.

5  2.  Defendant's motion to sever (Doc. 42) is **denied**.

6  Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from

7  5/2/2013.

8  Dated this 13th day of June, 2013.

9

10

11

12  _____
                    David G. Campbell
                United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28